## MARICOPA COUNTY ET AL. *v.* VALLEY NATIONAL BANK OF PHOENIX.

No. 449. Argued February 2, 1943.—Decided March 1, 1943.

*Messrs. Gerald Jones* and *Leslie C. Hardy,* with whom *Messrs. Joe Conway,* Attorney General of Arizona, *Harold R. Scoville, Richard F. Harless* and *J. Mercer Johnson* were on the brief, for petitioners.

*Mr. J. L. Gust,* with whom *Messrs. Charles L. Rawlins* and *William C. Fitts* were on the brief, for respondent.

*Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key, J. Louis Monarch, John D. Goodloe, Hans A. Klagsbrunn,* and *Max Hersh* filed a brief on behalf of the United States, as *amicus curiae,* urging affirmance.

Mr. Justice Douglas delivered the opinion of the Court.

Petitioners are counties of the state of Arizona and certain county officers. Respondent is a national banking association incorporated under the laws of the United States and having its principal banking house at Phoenix, Maricopa County, Arizona. It sued petitioners[1] to restrain the collection of certain state, county, school dis-

---

[1] For an earlier phase of this litigation see *Ex parte Bransford,* 310 U. S. 354.

trict and municipal taxes for the years 1935 and 1936 and invoked the jurisdiction of the United States District Court for the District of Arizona under § 24 (1) (a) of the Judicial Code, 28 U. S. C. § 41 (1) (a).

Respondent has two classes of shares of capital stock outstanding—common and preferred. Prior to March 9, 1933, national banks were not authorized to issue preferred shares. On that day they were given such authority and the Reconstruction Finance Corporation was authorized to subscribe for such shares. Act of March 9, 1933, 48 Stat. 1, Title III, as amended by § 2 of the Act of March 24, 1933, 48 Stat. 20, 12 U. S. C. § 51a, § 51d. On February 11, 1935, respondent issued to the Reconstruction Finance Corporation some 198,400 shares of its preferred stock with a par value of $1,240,000. By § 5219 of the Revised Statutes, 12 U. S. C. § 548, Congress consented on certain conditions to state taxation of shares of stock of national banking associations. Arizona taxes shares of stock of banking corporations. The tax is paid in the first instance by the bank which is entitled to reimbursement from the shareholder on whom the tax liability ultimately rests. Ariz. Code (1939) § 73–204, § 73–205. The Arizona statutes also provide that a lien for all taxes levied shall attach as of the first Monday in January of each year on the property assessed. § 73–506. Assessments of personal property are made by the county assessor between the first Monday in January and the first day in May of each year. § 73–402. State and local taxes levied on the basis of this assessment are collected by the county treasurer as *ex officio* tax collector. § 73–605, § 73–702. Petitioners' assessments for 1935 included respondent's preferred shares owned and held by the Reconstruction Finance Corporation. On the basis of those assessments, taxes were levied in 1935 against respondent which thereupon filed its bill of complaint in the federal District Court. While the cause was pend-

ing this Court decided *Baltimore National Bank* v. *State Tax Comm'n*, 297 U. S. 209, which held that preferred shares of a national bank held by the Reconstruction Finance Corporation were subject to state taxation by reason of the consent given by Congress in § 5219 of the Revised Statutes. That decision was rendered on February 3, 1936. On March 20, 1936, Congress enacted a statute providing that shares of preferred stock of national banks "heretofore or hereafter acquired by" the Reconstruction Finance Corporation "shall not, so long as Reconstruction Finance Corporation shall continue to own the same, be subject to any taxation by the United States, by any Territory, dependency, or possession thereof, or the District of Columbia, or by any State, county, municipality, or local taxing authority, whether now, heretofore, or hereafter imposed, levied, or assessed, and whether for a past, present, or future taxing period." 49 Stat. 1185, 12 U. S. C. § 51d. On the authority of that Act, the District Court, after finding that respondent's remedy at law was inadequate, issued a permanent injunction against the collection by petitioners of that portion of the 1935 taxes levied on respondent's preferred stock owned by the Reconstruction Finance Corporation. A permanent injunction was also issued in a like cause of action based on taxes for the year 1936 which were levied after March 20, 1936. The judgments in the two suits were affirmed by the Circuit Court of Appeals. 130 F. 2d 356. The case is here on a petition for writ of certiorari which we granted because of the public importance of the questions raised. Pursuant to the Act of August 24, 1937, 50 Stat. 751, 28 U. S. C. § 401, the case was certified to the Attorney General as involving the constitutionality of the Act of March 20, 1936. In response to that certification the United States submitted a brief as *amicus curiae*.

Petitioners contend that the Act of March 20, 1936, violates the Fifth and the Tenth Amendments. They further argue that the word "person" as used in the Fifth Amendment includes counties and states; and that they may raise the Tenth Amendment issue since they are asserting the authority of the state of Arizona in assessing and in attempting to collect the taxes in question. We need not decide the last two questions. For even if we assume, *arguendo*, that petitioners are right in those contentions, we are of the view that the judgment below must be affirmed.

Little need be said in answer to the argument that the Act violates the Tenth Amendment. The authority by which the taxes in question were levied did not stem from the powers "reserved to the States" under the Tenth Amendment. It was conferred by Congress which has under the Constitution exclusive authority to determine whether and to what extent its instrumentalities, such as the Reconstruction Finance Corporation, shall be immune from state taxation. *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180, 211–213; *Federal Land Bank* v. *Crosland*, 261 U. S. 374; *Pittman* v. *Home Owners' Loan Corp.*, 308 U. S. 21, 33; *Federal Land Bank* v. *Bismarck Lumber Co.*, 314 U. S. 95. Hence when Congress withdrew the privilege which it had previously granted, it was not curtailing any political power which the Constitution had reserved to Arizona. See *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664; *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103, 106, and cases cited.

The argument that the Act of March 20, 1936, violates the Fifth Amendment is based on its retrospective feature. Petitioners contend that since the liens of the taxes were impressed before the effective date of the Act, they were property rights which Congress could not destroy. We need not consider the case where prior to the withdrawal

of the privilege the tax had been collected or the tax lien foreclosed and the property reduced to the possession of the taxing authority. In the instant case the state taxing authorities are asserting rights which if recognized can be enforced by the maintenance of a suit to establish and foreclose a lien on property of a federal instrumentality, the Reconstruction Finance Corporation. Cf. *New York* v. *Maclay*, 288 U. S. 290. But even a "proceeding against property in which the United States has an interest is a suit against the United States." *United States* v. *Alabama*, 313 U. S. 274, 282. No such suit may be maintained without the consent of the United States. Such consent, though previously granted, has now been withdrawn. And the power to withdraw the privilege of suing the United States or its instrumentalities knows no limitations. *Lynch* v. *United States*, 292 U. S. 571, 581–582, and cases cited. Nor did the prior grant of the privilege to tax the shares rise to a higher level than a gratuity or bounty. Nothing was given in exchange. Cf. *Christ Church* v. *Philadelphia Co.*, 24 How. 300, 302. When Congress authorized the states to impose such taxation, it did no more than gratuitously grant them political power which they theretofore lacked. Its sovereign power to revoke the grant remained unimpaired, the grant of the privilege being only a declaration of legislative policy changeable at will. Cf. *Dodge* v. *Board of Education*, 302 U. S. 74. Hence, as in the case of the recall of other gratuities (*Frisbie* v. *United States*, 157 U. S. 160, 166; *Cummings* v. *Deutsche Bank*, 300 U. S. 115, 122–124), the withdrawal of this privilege invaded no rights protected by the Fifth Amendment.

*Affirmed.*

MR. JUSTICE RUTLEDGE did not participate in the consideration or decision of this case.