**UNITED STATES v. MARINA REALTY CO.**

Civ. No. 4893.

United States District Court
D. Puerto Rico.   San Juan Division.
Feb. 28, 1949.

Francisco Ponsa Feliu, Acting U. S. Atty., and R. Castro Fernandez, Asst. U. S. Atty., both of San Juan, Puerto Rico, for plaintiff.

Luis E. Dubon, of San Juan, Puerto Rico, for defendant.

CHAVEZ, District Judge.

Defendant, a civil partnership, is the owner of the perpetual usufruct of a tract of land located in the Ward of La Marina of the Municipality of San Juan, Puerto Rico, duly recorded at page 241 of Book 23 of the Capital, Property No. 976.   Said property is subject to an annuity (censo redimible) in favor of plaintiff United States of America in the principal sum of $13,256.00 and is also subject to the payment to the United States of America of an annual rent or "censo" of $662.88, payable on June 30th of each year.

Plaintiff alleges that defendant and its predecessors in title have failed to pay the annuities or "censo" which became due and payable on June 30th of each year from 1924 to 1947, both inclusive, and prays judgment at the rate of $662.88 per annum for the years 1924 to 1947, both inclusive, plus compound interest at 6% per annum,

amounting to a total of $33,671.65, and costs, and in default thereof, that all rights and title of defendant in the property be sold at public auction, and that the $33,671.65 be paid out of the proceeds.

Defendant denies that it and its predecessors have failed to pay the annuities for the years 1924 to 1947, but alleges that since it acquired the property, that is, since July 14, 1944, defendant has not paid plaintiff or any other person the annuity.

For other defenses, defendant alleges:

1. That the registry of property shows only a redeemable annuity in favor of plaintiff in the sum of $13,256.00, upon which there was payable an annual pension of $662.80.

2. That when defendant acquired title, there was no record in the Registry of any accrued annuities or pensions and that defendant had no notice of the same.

3. That on October 29, 1946, defendant notified plaintiff of its desire to redeem the censo by payment of the principal and the last five annual pensions or income.

4. That plaintiff did not, prior to this action, demand payment from defendant or its predecessors, of any accrued annual pensions or income, and that therefore it is not entitled to collect interest on such accrued annuities.

5. That defendant is an innocent third person acquiring without notice, and is not liable for annual pensions in excess of the last five years, under Section 34 of the Mortgage Law, and that all claims in excess of said period are barred by Section 1866(3) of the Civil Code of Puerto Rico.

### Cross-Complaint

In the cross-complaint, defendant-cross-complainant alleges that in the exercise of its right of redemption, it offers payment of the principal in the sum of $13,256 and the last five annual pensions or incomes in conformity with section 1866(3) of the Civil Code, and prays judgment declaring that plaintiff is only entitled to $3,314 in payment of the last five annual pensions accrued prior to the date of the filing of the complaint and to the annual payment of $662.80 for each year accruing thereafter, pending redemption of the redeemable annuity (censo redimible) in the sum of $13,256 and ordering the cancellation of said censo redimible, upon payment by defendant-cross-complainant of the principal $13,256, and $3,314, the amount of the five annual pensions accrued prior to the filing of the complaint and the additional annuities of $662.80 accruing each year thereafter.

Plaintiff has filed a motion for summary judgment, and a motion to dismiss the cross-complaint on the ground that the United States cannot be sued without its consent.

Subsequently on April 8, 1948, a stipulation was filed stating that even though the annuities subject of the proceeding have not been paid since the date alleged by the plaintiff there are questions of law raised in the answer as to the number of annuities defendant is bound to pay and agreeing on 20 days for filing of memoranda on said questions of law.

Plaintiff's motion for Summary Judgment is accompanied by the following supporting papers:

1. Affidavit of David D. Hochstein, an attorney, in the Lands Division of the Department of Justice, wherein affiant states that on December 17, 1946, he requested the Treasury Department to inform him whether it had any record of payments of the censo or annual ground rent subsequent to 1923. On the same date a letter was addressed from the Department of Justice to the Solicitor of the Department of Interior requesting information as to whether the Department of the Interior had any record of any payments of the censo;

That on January 6, 1947, the Assistant General Counsel, Treasury Department, wrote to the Lands Division to the effect that a diligent search of the record revealed no record of any payments subsequent to 1923; that by letter dated January 8, 1947, the Director of the Division of Territories and Island Possessions replied to the Lands Division stating that there was no record of the payment of any ground rent later than 1914; that deponent made a further search of the records of the Department of Justice and that the records disclosed that

no such payments have been made subsequent to 1923.

2. Letter of General Counsel, Treasury Department, stating that a diligent search of the files of the Solicitor of the Treasury was made and that no record of any payments on the censo subsequent to 1923 was found.

3. Letter from the Director of the Division of Territories and Island Possessions stating that there are no records in the Division of payment of ground rents later than 1914.

## Motion to Dismiss

Plaintiff has filed a motion to dismiss the cross-complaint on the ground that the United States has not given its consent to be sued.

Maricopa County v. Valley National Bank of Phoenix, 318 U.S. 357, 63 S.Ct. 587, 87 L.Ed. 834.

Petitioners were counties of Arizona and certain county officers. Respondent was a national banking association incorporated under the laws of the United States, having its principal banking house at Phoenix, Maricopa County, Arizona. It sued petitioners to restrain the collection of certain state, county school district and municipal taxes for the years 1935 and 1936. Prior to March 9, 1933, National Banks were not authorized to issue preferred shares. On that day they were given such authority and the Reconstruction Finance Corporation was authorized to subscribe for such shares. 12 U.S.C.A. §§ 51a, 51d. Respondent issued certain shares to the Reconstruction Finance Corporation. By section 5219 of the Revised Statutes, 12 U.S.C.A. § 548, Congress consented on certain conditions to State taxation of shares of stock of national banking associations. Petitioner's assessments for 1935 included respondent's preferred shares owned and held by the Reconstruction Finance Corporation and taxes were levied against respondent in 1935 on the basis of said assessment. Respondent, thereupon, filed its bill in the United States District Court. While the cause was still pending, the Supreme Court held on February 3, 1936, in Baltimore National Bank v. State Tax Commission, 297 U.S. 209, 56 S.Ct. 417, 80 L.Ed. 586, that preferred shares of a national bank held by the Reconstruction Finance Corporation were subject to state taxation by reason of the consent of Congress given in Sec. 5219 of the Revised Statutes. On March 20, 1936 Congress enacted a statute providing that shares of preferred stock of national banks "heretofore or hereafter acquired by" the Reconstruction Finance Corporation shall not be subject to State taxation. The District Court issued an injunction against the collection of the tax on the basis of this Act. 12 U.S.C.A. § 51d; 49 Stat. 1185.

After disposing of certain constitutional issues not pertinent to the question presently before the Court, the Court held that the rights asserted by the state taxing authorities, if recognized, can be enforced by a suit to establish a lien and foreclose a lien on property of a federal instrumentality, the Reconstruction Finance Corporation, and that "even a 'proceeding against property in which the United States has an interest is a suit against the United States'" and that "the power to withdraw the privilege of suing the United States or its instrumentalities knows no limitations." [318 U.S. 357, 63 S.Ct. 589]

United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058.

In this case the New York Supreme Court made an order authorizing Sherwood as a judgment creditor, to sue the government for breach of its contract with the judgment debtor. Sherwood sued the United States and his judgment debtor, one Kaiser, in the U. S. District Court. The District Court dismissed the complaint for want of jurisdiction, and was reversed by the Circuit Court of Appeals. 2 Cir., 112 F.2d 587. The issue was whether the Tucker Act, 28 U.S.C.A. § 250,[1] and Section 2, now 28 U.S.C.A. § 41(20)[2] conferred jurisdiction on the District Court. This section confers jurisdiction on the District Courts "Concurrent with the Court of Claims, of all claims not exceeding $10,-

---

[1] 1948 Judicial Code, 28 U.S.C.A. §§ 1491, 1496, 1501, 1503.

[2] 1948 Judicial Code, 28 U.S.C.A. §§ 1346, 2401, 2402.

000 founded * * * upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable."

The Court held that the Court of Claims is without jurisdiction in any suit brought against private parties and because adjudication of the right of the respondent (Sherwood) to proceed with the suit upon the contract of the judgment debtor with the United States was prerequisite to any recovery upon the Government contract. The contention was made, however, that even though the Court of Claims was without jurisdiction, since the District Court had jurisdiction under the Tucker Act to adjudicate claims against the United States and by virtue of other provisions of the Judicial Code has jurisdiction to adjudicate the issues between respondent and the judgment debtor, the Rules of Civil Procedure, 28 U.S.C.A., authorize the exercise of both jurisdictions in a single suit. The Court held that nothing in the rules of civil practice authorizes the maintenance of any suit against the United States to which it has not otherwise consented and that the Tucker Act did no more than authorize the District Court to sit as a Court of Claims and that the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims.

Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235.

In this case Minnesota brought a proceeding in a State Court to take by condemnation a right of way for a highway over lands forming a part of an Indian Reservation. The United States was named as a defendant. The cause was removed to the Federal Court by stipulation. In the Federal Court the United States moved to dismiss on the ground that it had not consented to be sued.

The only thing in this case pertinent to the issue presently before the Court is the question whether the United States was an indispensable party. The Court held that the United States was an indispensable party and that property in which the United States has an interest is a suit against the United States.

Morrison, Jr., et al. v. Work, Secretary of the Interior, et al., 266 U.S. 481, 45 S. Ct. 149, 69 L.Ed. 394.

This was a suit by an alleged Chippewa Indian against the Secretary of the Interior, the Commissioner of the General Land office, the Commissioner of Indian Affairs and the Secretary of the Treasury. The only thing in the case pertinent to the Motion to Dismiss now before the Court is the statement 266 U:S. 481, on page 485, 486, 45 S.Ct. 149, 69 L.Ed. 394, that to interfere with the management and disposition of the lands or the funds involved by enjoining the officials would interfere with the performance of governmental functions and vitally affect interests of the United States and that the United States was an indispensable party to the suit. The United States was not joined as a party, nor could it have been, as Congress had not given its consent to be sued.

Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434.

By section 17 of the Economy Act of March 20, 1933, 38 U.S.C.A. §§ 717, 718, Congress repealed "all laws granting or pertaining to yearly renewable term insurance are hereby repealed." The issue was whether in repealing "all laws granting or pertaining to yearly renewable term insurance" Congress aimed at the right or merely the remedy. The court held that Congress sought to take away the right of beneficiaries of yearly renewable term policies and not to withdraw their privilege to sue the United States. The only pertinent part of the decision is a general statement, 292 U.S. at the foot of page 581, 54 S.Ct. at page 844, 78 L.Ed. 1434, which reads as follows: " * * * consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. The consent may may be withdrawn, although given after much deliberation and for a pecuniary consideration. * * * The sovereign's im-

munity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced."

■ The above cases merely illustrate the familiar rule that the government cannot be sued without its consent.

·The case which most closely approaches the case now before the Court is United States v.·Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888. In that case the United States took a general assignment of the assets and receivables of the Fleet Corporation, by Act of June 29, 1936, 46 U.S. C.A. § ·1113. The Fleet Corporation had assumed certain ·sub-contracts and commitments of one McClouth, including a contract of McClouth to purchase lumber from the Ingram-Day Lumber Co. The Lumber company obtained a judgment against McClouth for $42,789.96 for breach of this contract, and McClouth having died, filed its claim on the judgment in the probate court. Subsequently the United States obtained a judgment of $40,165.48 against McClouth's administrator, representing damages for the conversion of materials left with McClouth as bailee, and filed its claim on said judgment in the probate court. The administrator presented the judgment claim of the administrator to the General Accounting office, and when the claim was rejected, sought to set off that judgment against the judgment of the United States. It was contended that the immunity extends only to original suits; that when a sovereign voluntarily seeks the aid of the courts for collection of its indebtedness it takes the form of a private suitor and subjects itself to the full jurisdiction of the court. Emphasis was placed on the fact that probate proceedings are in rem or quasi in rem.

The Court held that there was no waiver of immunity and quoted The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed 313, as follows: "Generally speaking a claim that would not constitute a cause of action against the sovereign cannot be asserted as a counterclaim."

■· The United States has not consented to be sued in this case, and the cross-complaint will be dismissed.

We now come to the question of plaintiff's right to recover interest at the rate of 6% per annum on the unpaid annuities due on the "censo" encumbering defendant's property.

Two rules have been established by the courts as to the right to recover interest on stated installments of interest, one, that it is recoverable; the other, that it is not.

■ Many courts have referred to simple interest upon the installments of interest as compound interest. This seems to be a confusion of terms. In compounding interest each installment of interest is, on the date it becomes due, added to the principal and itself becomes principal, and this is repeated as each installment falls due, while in allowing simple interest upon each installment of interest from the time it falls due until it is paid, or, as it is sometimes called, annual interest, there is no compounding in the true sense. It may be that the general disinclination of the courts to allow compound interest is, because of this confusion, responsible in some cases for dissallowing what is not compound interest. 27 A.L.R. 81, 84.

The theory upon which some of the courts disallow interest upon interest is stated as follows in Leonard v. Villars' Adm'r, 23 Ill. 377:

"To compute interest upon interest after its maturity has by all courts, whether exercising equity or common-law jurisdiction, been held to be compound interest and in violation of law. This question is one that has been frequently presented, and, it is believed, as uniformly held to be unauthorized. We are not aware of any well-considered case which has held that there is an implied legal or moral obligation to pay interest upon unpaid interest, after its maturity."

On the other hand, there is authority holding that installments of interest falling due at stated intervals bears interest upon failure to make payment as stipulated. These cases are predicated on the theory that the interest payable at the expiration of a stated term constitutes a sum of money then due without a specific contract for interest, for which the debtor could be sued.

In Preston v. Walker, 26 Iowa 205, 96 Am.Dec. 140, the Court stated as follows:

"It seems to us that, as defendant was under a legal obligation to pay interest at the end of the (each) year, it was a sum of money then due, without a contract fixing the rate of interest upon it, and for which he might have been sued, and that he was therefore bound to pay its legal value. Or, in the language of the statute, it is 'money due by express contract,' or 'money due,' and as such the promisee is entitled to his interest from the time it is so due."

In Talliaferro's Ex'rs v. King's Adm'r, 9 Dana, Ky., 331, 35 Am.Dec. 140, the Court said:

"The interest, by the terms of the covenant, is made payable at the end of each year, and is as much then demandable as if a specific sum equal to the amount of interest had been promised, and, in default of payment, as much entitles the plaintiff to demand interest upon the amount so due and unpaid. The fact that the amount so promised to be paid is described as interest accruing upon a larger sum which is made payable at a future day cannot the less entitle the plaintiff to demand interest upon the amount, in default of payment, as a just remuneration in damages for the detention or nonpayment."

In Wilson v. Neal, C.C., 23 F. 129, the Court allowed interest upon coupon bonds. This was predicated upon the rule established in two cases decided by the State Supreme Court.

In Gelpcke v. Dubuque, 1 Wall. 175, 17 L.Ed. 520, the Court allowed interest on municipal bond coupons. However, the Court, in allowing what was in effect interest upon interest, based its decision on the ground that the bonds and coupons in question had all the qualities of commercial paper, and stated as follows:

"Bonds and coupons, like these, by universal commercial usage and consent, have all the qualities of commercial paper. If the Plaintiffs recover in this case, they will be entitled to the amount specified in the coupons, with interest and exchange as claimed."

In Aurora City v. West, 7 Wall. 82, 19 L.Ed. 42, interest was allowed on coupons, following the Gelpcke case, supra. Koshkonong v. Burton, 104 U.S. 668, 26 L.Ed. 886, allowed interest upon certain bond coupons, but the decision rested upon the Local State law.

City of Cairo v. Zane, 149 U.S. 122, 13 S.Ct. 803, 37 L.Ed 673, allowed interest upon bond coupons, following the settled Illinois rule that coupons draw interest after maturity.

In Board of Com'rs of Ouray County v. Geer, 8 Cir., 108 F. 478, interest on coupons was allowed under the Colorado Statute.

The theory relied upon in the Gelpcke case, supra, and that seems to be the basis for the rule, followed in all of these cases, was that the coupons, when legally executed, became separate and distinct obligations, and contained all the essential features of a promissory note or other commercial papers, and when severed from the bonds, became independent claims.

In Chase National Bank v. Citizens Gas Co., 7 Cir., 113 F.2d 217, 231, the trustee for the bondholders was authorized to sue either on the bonds in order to enforce a covenant to pay interest coupons or the covenant to pay the principal. The trustee elected to recover on the coupons. The Court held that the two covenants were independent, and that as the trustee had not elected to sue on the principal, any limitations concerning interest affecting the principal did not affect the coupons, and allowed interest on the unpaid coupons, stating:

"Now the usual rule in these matters is to allow interest on the unpaid interest coupons after default."

In United States v. Sanborn, 135 U.S. 271, 10 S.Ct. 812, 815, 34 L.Ed. 112, an Act of Congress approved May 8, 1872, 17 Stat. 69, authorized the Secretary of the Treasury to employ persons to assist the officers of the Government in recovering and collecting money belonging to the United States, and to pay them for their services out of the proceeds. A contract was entered into between Sanborn and the Acting Secretary of the Treasury which among other things provided that for his services and out of the money collected Sanborn was to receive 50% of the amount.

On October 25, 1872, Sanborn presented to the Secretary his proposal to collect certain state taxes due to the Government from the estate of one General John E. Wool, who had died on November 10, 1869, leaving a large estate, Mrs. Wool surviving him.

On May 7, 1873, Mrs. Wool died and within a few weeks thereafter, her executor wrote to the Secretary of the Treasury asking that the question of a succession and legacy tax from the estate of General Wool be referred to some person having authority to pass upon his liability to pay it.

On August 1, 1873, Wool's executor upon his own motion, without having known Sanborn and without having the matter brought to his attention by Sanborn delivered to one Hawley, the Supervisor of Internal Revenue, a check for $14,668. Hawley delivered it to Sanborn about the same date and on August 3, 1873, Hawley enclosed it to the Secretary of the Treasury, in a letter which after referring to the contract entered into between Sanborn and the Secretary of the Treasury stated that the executor of the estate of General Wool had paid to him (Sanborn) the sum of $14,668, being the full amount of taxes due the Government. Sanborn in his letter requested that in conformity with the contract one-half of the same be paid into the Treasury of the United States and the remaining half paid to him. Subsequently on August 16, 1873, Sanborn was paid $7334 on account of collections from the estate of General Wool.

Ten years later the Government sued Sanborn for recovery of the $7334 plus interest. The Court while holding that in justice and equity Sanborn should return the principal, said the following with respect to the interest:

"But we are of opinion that the court below erred in allowing interest for any time prior to the institution of this action. More than 10 years elapsed after the payment to Sanborn before his right to retain the money was questioned by suit or otherwise. When the facts, disclosed by the evidence, were first discovered by the officers of the government whose duty it was to institute legal proceedings against the defendant, does not appear. It is entirely consistent with the record that the long delay which occurred is without excuse. In Redfield v. [Ystalyfera] Iron Co., 110 U.S. 174, 3 S. Ct. 570 [28 L.Ed. 109], the question was whether the plaintiff was entitled, under the circumstances of that case, to recover interest, the action being against a collector to recover damages for an illegal exaction of customs dues. The court, after observing that interest is recoverable as of right, when reserved expressly in the contract, or when implied by the nature of the promise, said: 'But where interest is recoverable, not as a part of the contract, but by way of damages, if the plaintiff has been guilty of laches in unreasonably delaying the prosecution of his claim, it may be properly withheld.' We think that the same rule should be applied against the government when in a case like the present one it has long delayed an assertion of its rights, without showing some reason or excuse for the delay, especially when it does not appear that the defendant has earned interest upon the money improperly received by him."

In Board of Commissioners of County of Jackson, Kansas, v. United States, 308 U.S. 343, 60 S.Ct. 285, 288, 84 L.Ed. 313, the Secretary of the Interior in 1908, cancelled an Indian trust patent under which her land was exempt from taxes and in its place issued over her protest a fee simple patent. In consequence the County began to subject the land to its regular property taxes. In 1927 Congress authorized the Secretary of the Interior to cancel fee simple patents theretofore issued over the objection of allottees. In 1935 the patent was cancelled and the United States as guardian of M-Ko-Quah-Wah sued for the recovery of taxes and interest, and obtained judgment for both. In considering the question of allowability of interest, the Court stated as follows:

"In ordinary suits where the Government seeks, as between itself and a private litigant, to enforce a money claim ultimately derived from a federal law, thus implying a wish of Congress to collect what it deemed fairly owing according to the tra-

ditional notions of Anglo-American law, this Court has chosen that rule as to interest which comports best with general notions of equity. United States v. Sanborn, 135 U.S. 271, 281, 10 S.Ct. 812, 815, 34 L. Ed. 112; Billings v. United States, 232 U. S. 261, 34 S.Ct. 421, 58 L.Ed. 596. Instead of choosing a rigid rule, the Court has drawn upon those flexible considerations of equity which are established sources for judicial law-making. * * *

"The cases teach that interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable. United States v. Sanborn, 135 U.S. 271, 281, 10 S.Ct. 812, 815, 34 L. Ed. 112; Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596."

Cherokee Nation v. United States, 270 U.S. 476, 46 S.Ct. 428, 70 L.Ed. 694.

In Cherokee Nation v. United States, 202 U.S. 101, 26 S.Ct. 588, 50 L.Ed. 949, the Court affirmed a judgment in favor of the Cherokee Nation for principal and interest at 5%. Subsequently, by leave of Congress, the Cherokee Nation sued for compound interest, alleging that the principal and interest due in 1885 should be regarded as a lump sum, and that, thereafter, interest on the total at 5% to time of payment should have been allowed. The Court stated [270 U.S. 476, 46 S.Ct. 433]:

"What the appellant here seeks is compound interest; that is, interest on interest from 1895 until now. The general rule, even as between private persons, is that, in the absence of a contract therefor or some statute, compound interest is not allowed to be computed upon a debt."

■ A great many courts abhor both true compound interest and interest upon stated installments of interest. Many courts allow interest upon installments of interest. However, all of the federal cases allowing interest upon installments of interest involve bond coupons or warrants and allow it on the ground that they are in the nature of commercial paper, and they rely upon state law. The United States, however, is not bound by local rules with respect to interest when the United States is the creditor and the Court is free to make its own determination in response to considerations of fairness and interest should be denied when its exaction would be inequitable.

■■ Although the rule is that in an action wherein the United States is a creditor and the private person is a debtor local statutes with respect to interest are not binding on the United States, there is no case forbidding the Federal Court from adopting the local rule in connection with the allowance of interest, and in the present case the Court, under the authority and in the exercise of the discretion invested in it by the Sanborn case and the Board of Commissioners of County of Jackson, supra, will adopt the rule which has been the law of Puerto Rico since 1889.

In Knights of Columbus Building Association v. Arcilagos, 45 PRR 89, May 16, 1933, the plaintiff urged that it had been adjudged to pay regular interest on interest due, in spite of the fact that no contract to that effect existed between the parties. The judgment of the lower court directed the payment of legal interest on interest due from the time the foreclosure proceeding was instituted on September 5, 1928 until fully paid. The court then cited Section 1062 of the Civil Code of Puerto Rico, 1930 edition, which provides that interest due shall earn legal interest from the time it is judicially demanded even if the obligation should have been silent on this point. Thus the code provision is referred to as the authority for the above proposition.

Again in Salvador v. Palencia, 25 Phillipine Reports 661 (1913), the court sustained an assignment of error based upon the code provision that "interest due shall earn legal interest from the time it is judicially demanded even if the obligation should have been silent on this point." Civil Code, Art. 1109.

In the case at bar the court has given serious consideration to the following facts:

(a) Defendant bought the perpetual usufruct on July 14, 1944 with knowledge that a "censo" encumbered the same, but

without notice that there was an accrued unpaid amount due;

(b) Defendant has not paid the "censo" since it acquired the usufruct from Banco Popular in 1944;

(c) On October 29, 1946, the defendant notified the plaintiff through the United States Attorney of its desire to redeem the "censo" by paying the principal thereof, viz., $13,256 and the last five annual pensions or income upon execution of the necessary instruments or cancellation thereof;

(d) On April 25, 1947 the defendant by letter to the United States Attorney confirmed a prior verbal conference and offered to redeem the "censo," plus the annuities corresponding to the years 1924 to 1947, inclusive.

(e) No demand was ever made of the defendant or its predecessors in title for payment of the yearly annuity or "censo" notwithstanding the fact that the letters and affidavits submitted by the Government in support of its motion for summary judgment show that the Government's records disclosed that no payment had been made on the "censo" since 1923.

(f) The long delay on the part of the Government in making its claim is unexplained, although counsel for defendant in its brief argues that from the facts he assumes that the Government had forgotten about the "censo" until the defendant brought the matter to the attention of the Government on October 29, 1946.

(g) Up to the time of the acquisition of the usufruct by the defendant in 1944, the defendant had no use of the principal or the property securing it and even if defendant pays the whole amount sued for, its usufruct will be left with the burden of the "censo".

(h) An analysis of the claim of the Government shows that the amount due on the "censo" from 1924 to June 1947, inclusive, is $15,246.24, while the claim for interest on the "censo" over the same period amounts to $18,425.41.

It is accordingly the judgment of the Court that the motion for summary judgment be sustained and that judgment be entered in favor of the United States for the annuities accrued from 1924 to July 21, 1947, the date of the filing of the complaint, without interest thereon, plus interest at the rate of 6% upon each installment of the annuity or "Censo" from July 21, 1947, to the date of the judgment. It is so ordered.