492 F.2d 878
 TRANSWESTERN PIPELINE COMPANY, Plaintiff-Appellant, and
United States of America, Intervening Plaintiff-Appellee,
v.
KERR-McGEE CORPORATION, a Delaware corporation,
Defendant-Appellee, Olen F.Featherstone et al.,
Intervening Defendants-Appellees.
 No. 73-1521.
 United States Court of Appeals, Tenth Circuit.
 Argued Jan. 7, 1974.
Decided Feb. 26, 1974.
 
 Ben H. Rice, III, Houston, Tex. (James W. McCartney and Ted A. Hodges, houston, Tex., on the brief, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., and Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N.M., of counsel), for plaintiff-appellant.
 John D. Robb, Albuquerque, N.M., (Mark K. Adams, Albuquerque, N.M., Willard P. Scott, Oklahoma City, Okl., Henry S. Glascock, Gallup, N.M., and Don M. Fedric, Roswell, N.M., on the brief), for Kerr-McGee Corp. and Olen F. Featherstone.
 Neil T. Proto, Dept. of Justice, Washington, D.C. (Victor R. Ortega, U.S. Atty., Richard J. Smith, Asst. U.S. Atty., Wallace H. Johnson, Asst. Atty. Gen., Albuquerque, N.M., Edmund B. Clark and Jacques B. Gelin, Dept. of Justice, Washingtion, D.C., on the brief), for United States of America.
 Before HILL, BARRETT and DOYLE, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Transwestern Pipeline Company, (Transwestern), appeals from the dismissal of its three count complaint filed against Kerr-McGee Corporation, (Kerr-McGee), the United States of America, and Olen F. Featherstone, et al., wherein it had attempted to prevent Kett-McGee from mining potash from under one of its natural gas compressor stations.
 
 
 2
 The area in dispute is Section 31, T 20 W, R 32 E, NMPM, Lea County, New Mexico. The land is located within the Carlsbad Potash Basin, (Basin). The Basin is approximately twenty miles by thirty-eight miles and has been mined since 1931.
 
 
 3
 In 1954 the Department of the Interior, (Interior), leased to a corporate predecessor of Kerr-McGee the right to mine potash on certain lands within the Basin, including Section 31. Under the terms of the lease, the lessee was to undertake the mining of potash with reasonable diligence, skill, and care, and the United States was to receive a royalty based on production. The United States reserved the surface of the land for easements or rights of way, insofar as same did not interfere with the use by the lessee in mining potash.
 
 
 4
 From 1954 to 1965 Kerr-McGee conducted exploratory operations to determine the density and location of potash throughout the leased area, including Section 31. It also constructed a processing mill and related facilities between 1963 and 1965. In October of 1965, after receiving approval for its proposed mining plan, Kerr-McGee began substantial mining operations within the Basin. Neither Kerr-McGee's approved plan nor its initial operations included the mining of Section 31. Thereafter, in June, 1971, when Kerr-McGee submitted a 'courtesy plan' to mine in Section 31 under one of Transwestern's compressor stations, United States Geological Survey approval was not required because this was not considered a significant departure from the 1965 plan.
 
 
 5
 Transwestern was afforded a right of way for a pipeline through, and a compressor station site on, Section 31 by the Bureau of Land Management of the Interior in 1959, after a determination by the Federal Power Commission that a gas pipeline system through the Basin was vested with the public's interest and was required by public convenience and necessity. This right of way was issued subject to all valid existing rights.
 
 
 6
 Construction of the pipeline and compressor station started in 1959. Both were in service in 1960. During the acquisition of the right of way through the Basin and construction of the compressor station, Transwestern was fully aware of Kerr-McGee's lease. It knew that mining would cause surface subsidence and damage to, or destruction of the compressor station. Transwestern negotiated, unsuccessfully, with Kerr-McGee to acquire part of its leasehold interests.
 
 
 7
 In 1962 Transwestern acquired a patent to eighty acres of Basin land which included the compressor station site. By reason of the patent, Transwestern was conveyed the land in fee, subject to the reservation by the United States of 'all minerals in the land so granted, together with the right to prospect for, mine, and remove the same as authorized.' Under the terms of an exchange, Transwestern's compressor station. When an rights of prior permittees or lessees to use so much of the surface as is required for mining operations, without compensation to the patentee for damages resulting from proper mining operations.
 
 
 8
 In 1969 Transwestern and Kerr-McGee began discussing the latter's intent to conduct mining operations in Section 31, including the area under Transwestern's compresor station. When an agreement could not be reached on the amount of ore to be left in place and the amount of compensation to be paid for it, Transwestern filed suit. Transwestern's three count complaint attempted to establish its right to lateral and subjacent support for its compressor station, its right to restrict some of the mining operations of Kerr-McGee in Section 31 by the power of eminent domain, and the unlawful approval of Kerr-McGee's mining plan.
 
 
 9
 The trial court dismissed Transwestern's first count on Kerr-McGee's motion. After trial, the Court also dismissed the second count. The trial court held that Transwestern took its right of way subject to Kerr-McGee's right to remove the potash; that there was no obligation to Transwestern with respect to the approval or disapproval of Kerr-McGee's mining plan; and that such plan was proper. In so ruling, the trial court recognized that Transwestern was the holder of a certificate of public convenience and necessity and that it claimed its right of condemnation pursuant to 15 U.S.C.A. 717f(f) and (h), but that since the United States was the owner in fee of the potash beneath the compressor station, and had only leased the land to Kerr-McGee, thereby affording it the right to remove the potash subject to a royalty payment to the United States, Transwestern's power of condemnation did not extend to the United States, and, accordingly, did not extend to Kerr-McGee's lease of Section 31. The trial court further held that such a condemnation would be contrary to the purpose of the Government's lease granted to Kerr-McGee and that, in any event, the condemnation powers afforded by 15 U.S.C.A. 717f(f) and (h) relate only to the taking of privately owned land.
 
 
 10
 On appeal Transwestern contends that: (1) Congress intended that pipeline facilities, authorized by the Mineral Leasing Act of 1920, have surface support; (2) that Kerr-McGee's mining plan as submitted to the United States Geological Survey does not extend to the removal of the lateral and subjacent support of its compressor station, nor could the United States Geological Survey lawfully approve a mining plan which did so; and (3) that Transwestern may protect its rights to lateral and subjacent support of its compressor station through the exercise of eminent domain.
 
 I.
 
 11
 Transwestern contends that Congress intended that pipeline facilities, authorized by the Mineral Leasing Act of 1920, have surface support. This contention, though viable from a practical sense point of view, is without merit under the facts of this case.
 
 
 12
 Transwestern was fully aware of Kerr-McGee's lease. Paragraph 39 of the Stipulation within the pre-trial order notes:
 
 
 13
 Prior to the construction of its compressor station and pipeline in Section 31, Transwestern knew of the existence of the 1954 lease now held by Kerr-McGee. Transwestern had been advised by a Kerr-McGee representative with respect to the location of a potash ore body underneath Section 31 as reflected in Exhibit D5 and with respect thereto was also advised that mining thereof by the methods used in the Basin involving high . . . percentage of ore extraction would probably result in surface subsidence and that such mining under the compressor station and pipeline would probably result in damage to the pipeline and damage to or destruction of the compressor station. Also, under the terms of Kerr-McGee's lease, Kerr-McGee was afforded 'the exclusive right and privilege to mine, remove, and dispose of all the potassium and associated deposits in, upon, or under the following described lands:-- Sec. 31, All.' This lease, furthermore, reserved to the United States: 'The right to dispose of the surface of the land embraced herein under existing law, or laws, hereinafter enacted, insofar as said surface is not necessary for use of the lessee in extracting and removing the deposits therein.'
 
 
 14
 These conditions standing alone, vitiate Transwestern's contention that it should be afforded lateral and subjacent support for its compressor station. However, even if we were inclined to disregard these factors, which we are not, Transwestern's right of way rights acquired in June, 1959, were subject to 'all valid existing rights' and its patent had the following express reservation:
 
 
 15
 Reserving, also, to the United States all minerals in the land so granted, together with the right to prospect for, mine, and remove the same as authorized by the provisions of Section 8 as amended as aforesaid. This entry is made . . . and the patent is issued subject to the rights of the prior permittees or lessees to use so much of the surface of said lands as is required for mining operations, without compensation to the patentee for damages resulting from proper mining operations.
 
 
 16
 Since Transwestern opted to build a compressor station on and a pipeline system through Section 31, notwithstanding its knowledge of Kerr-McGee's lease, its knowledge that subsidence of the land could damage or destroy its station, and its knowledge of the restrictions within its own right of way and patent, Transwestern cannot now prevail in its bid for surface support. The control of public lands is vested exclusively with Congress. Alabama v. Texas, 347 U.S. 272, 74 S.Ct. 481, 98 L.Ed. 689 (1954). Concurrent with and inherent in this control is the right of Congress to impose conditions over federal funds and property. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).
 
 II.
 
 17
 Transwestern contends that Kerr-McGee's mining plan as submitted to the United States Geological Survey does not extend to the removal of the lateral and subjacent support of its compressor station and that the United States Geological Survey could not lawfully approve a mining plan which did so. In disposing of this contention below, the trial court held:
 
 
 18
 In reviewing this matter I find that the title vested in Kerr-McGee prevails over the title of Transwestern and that Transwestern took its right of way subject to the right of Kerr-McGee to remove potash and if necessary, to subside the surface in so doing. I further find that the Department of Interior and Kerr-McGee had no obligation to notify or hear Transwestern insofar as the approval of disapproval of a mining plan was concerned. The legislation providing for a mining plan and Department approval of it was designed for the purpose of seeing that the maximum amount of ore would be produced without waste and in such manner that the health and lives of the miners would not be placed in jeopardy. The mining plan submitted by Kerr-McGee was adequate and the United States Geological Survey was kept current and informed of Kerr-McGee's mining activity.
 
 
 19
 The findings of a trial court will not be reversed on appeal unless they are clearly erroneous. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Williams v. Eaton, 468 F.2d 1079 (10th Cir. 1972); Fed.R.Civ.P., Rule 52, 28 U.S.C.A. Where, as here, the United States reserves the mineral estate, together with the right to prospect for, mine, and remove the same in a grant of the surface estate, there is a servitude laid on the surface estate for the benefit of the mineral estate. Kinney-Coastal Oil Company v. Kieffer, 277 U.S. 488, 48 S.Ct. 580, 72 L.Ed. 961 (1928). Applying this standard we hold that the trial court properly held that Kerr-McGee prevails over Transwestern and that Kerr-McGee was empowered to remove potash, and if necessary, to subside the surface in so doing.
 
 III.
 
 20
 Transwestern's final contention is that it may protect its rights to lateral and subjacent support of its compressor station through the exercise of the power of eminent domain. Transwestern alleges that it has the power to acquire by eminent domain the necessary property rights for the location of its compressor station via Section 7(h) of the Natural Gas Act. 15 U.S.C.A. 717f(h) provides:
 
 
 21
 (h) When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate and maintain a pipeline or pipelines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, presure apparatus, or other stations or equipment necessary to the proper operation of such pipeline or pipelines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located . . .
 
 
 22
 Transwestern contends that since its compressor station and additions thereto were made under certificates of public convenience and necessity issued pursuant to orders of the FPC, it is empowered to exercise the power of eminent domain against Kerr-McGee to protect its compressor station and to assure its continued operation.
 
 
 23
 In support of this contention Transwestern cites a number of decisions in which holders of certificates of public convenience and necessity have exercised condemnation powers under Section 717f(h). These decisions do not control because each involved the condemnation of privately owned land.
 
 
 24
 Here, we are concerned with land wherein the United States is the fee owner of the mineral estate which has been leased to Kerr-McGee for the exclusive purpose of enjoyment for a specified period of time, for valuable consideration, to explore, operate, develop and market the potash mineral, subject to specific terms and the payment of a royalty to the United States. We take judicial notice of the fact that the United States, as lessor, has not transferred its ownership or title in and to the mineral estate to Kerr-McGee, as lessee. It is precisely for this reason that, under all of the circumstances of this case, we must hold that a condemnation action against Kerr-McGee by Trans-western which, if successfully prosecuted, would deny any mining activity now reasonably permitted to ultimately market potentially valuable potash reserves owned by the United States underlying the surface area of the compressor station tract, is in fact a condemnation action against the United States. Simons v. Vinson, 394 F.2d 732 (5th Cir. 1968), cert. denied, 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379 (1968). The United States, under these circumstances, is an indispensable party. However, the United States may not be sued without its consent. Maricopa County v. Valley National Bank of Phoenix, 318 U.S. 357, 63 S.Ct. 587, 87 L.Ed. 834 (1943); United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941). The United States has not consented to be sued. The trial court did not err in this finding nor in its finding that the power of eminent domain afforded holders of certificates of public convenience and necessity under Section 7(h) of the Natural Gas Act does not extend to lands owned by the United States.
 
 
 25
 Eminent domain is the power of the sovereign to take, or to authorize the taking of, private property for a public use without the owner's consent, conditioned upon the payment of just compensation. 26 Am.Jur.2d Eminent Domain 1; Cline v. Kansas Gas and Electric Company, 260 F.2d 271 (10th Cir. 1958); United States v. 2,005.32 Acres of Land, More or Less, Situate in Corson County, South Dakota, 160 F.Supp. 193 (D.S.D.1958); United States v. 209.25 Acres of Land, More or Less, 108 F.Supp. 454 (W.D.Ark.1952), rev'd. on other grounds, United States v. Willis, 211 F.2d 1 (8th Cir. 1954), cert. denied, 347 U.S. 1015, 74 S.Ct. 871, 98 L.Ed. 1138 (1954).
 
 
 26
 It is fundamental that the Mineral Leasing Act of 1920 contemplates the severance of the mineral estate from the surface estate and provides for their alienation separately. 54 Am.Jur.2d Mines and Minerals 97. The owner of the surface estate cannot assert any title or possessory interest in lands owned by or in which the United States has any interest without the consent of the United States. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); Stewart v. United States, 242 F.2d 49 (5th Cir. 1957); Anderson v. United States, 229 F.2d 675 (5th Cir. 1956).
 
 
 27
 Whether an action is against the United States is not to be determined by the mere nominal party on the record, but by the issues presented and the effect of the judgment which can be entered in response to such issues. Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971); Ogden River Water Users' Association v. Weber Basin Water Conservancy, 238 F.2d 936 (10th Cir. 1956). In Kinney-Coastal Oil Company v. Kieffer, supra, the Supreme Court held that mining leases issued subject to the Mineral Leasing Act of 1920 (the Kerr-McGee 1954 potash lease was issued under the Potash Act of 1927, 30 U.S.C.A. 281-286, which became a part of the Mineral Leasing Act of 1920), constitute the dominant estate and that a homestead patentee with surface estate title holds the servient estate. Specifically, the Court states, inter alia:
 
 
 28
 In effect therefore a servitude is laid on the surface estate for the benefit of the mineral estate to the end, as the acts otherwise show, that the United States may realize, through the separate leasing, a proper return from the extraction and removal of the minerals. 277 U.S. at 504, 48 S.Ct. at 583.
 
 
 29
 We recognized the vitality of Kieffer in a very recent opinion. Mountain Fuel Supply Company v. Smith, 471 F.2d 594 (10th Cir. 1973).
 
 
 30
 Affirmed.
 
 WILLIAM E. DOYLE, Circuit Judge (dissenting):
 
 31
 I respectfully dissent, but at the same time I hasten to point out that I agree with all points of the opinion except with the part that denies Transwestern the right to condemn the leasehold interest of Kerr-McGee. 15 U.S.C. 717f(h) authorizes the holder of a certificate of public convenience and necessity, here Transwestern, to exercise the right of eminent domain whenever appropriate. It says further that when he cannot by contract or otherwise agree with the owner of property 'to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property' or 'for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe lines', it may acquire the same by eminent domain. At bar Transwestern seeks to employ its power of condemnation to protect its compressor station, thereby to insure continued operation of its pipeline.
 
 
 32
 My main problem with part II of the majority opinion is that it gives a literal interpretation to the word 'owner' and declares that the United States is the owner and a necessary party and cannot be sued or joined; but there is no interest of the United States in controversy. The only genuine issue is whether the right of eminent domain allows the taking of a leasehold interest such as Kerr-McGee has, and it is clear from a reading of the entire section under scrutiny that it contemplates the appropriation of any necessary right-of-way, land or other property.
 
 
 33
 The interest of the owner of a leasehold, even a leasehold granted by the United States,[1] continuously stands in the shadow of condemnation from the government or its delegate on the payment of just compensation. United States v. Fisk Bldg., 99 F.Supp. 592 (S.D.N.Y.1951); United States v. Certain Parcels of Land in Baltimore, Maryland, 55 F.Supp. 257 (D.C.Md.1944); Leonard v. Autocar Sales and Service Co., 392 Ill. 182, 64 N.E.2d 477, cert. denied, 327 U.S. 804, 66 S.Ct. 968, 90 L.Ed. 1029, rehearing denied, 328 U.S. 878, 66 S.Ct. 1118, 90 L.Ed. 1646, 328 U.S. 879, 66 S.Ct. 1339, 90 L.Ed. 1647 (1946). In undertaking such proceedings, the condemnor certainly does not take the entire fee where, as here, only the leasehold interest is necessary. See United States v. Fisk Bldg., supra, wherein the court upheld the power of the Administrator of General Services to condemn the lease on two floors of an office building in New York.
 
 
 34
 I submit that Transwestern is empowered to condemn Kerr-McGee's leasehold in the area in question and does not need the United States as a party. A somewhat similar case was before the United States District Court for the Western District of Pennsylvania in 5655 Acres of Land and Coal in Indiana County, Pennsylvania v. Texas Eastern Transmission Corp., 190 F.Supp. 175 (D.C.W.D.Pa.1960). The statute we are now considering was also there involved. Plaintiff owned coal and mining rights as well as waivers of rights to surface support and a release from damages to surface improvements. The defendant was a natural gas company which had constructed a pipeline which encroached on plaintiff's mining interests without undergoing condemnation proceedings. In other words, as in the case at bar, the transmission company was in effect a trespasser. The plaintiff brought an action to recover compensation. The court recognized that the transmission company had a right to maintain its pipeline despite the existence of plaintiff's property right to mine the coal. It was said that where a corporation has employed its power of eminent domain in a defective manner, the aggrieved party has a right to damages in trespass or may treat the action as one in condemnation giving rise to just compensation.
 
 
 35
 At bar Transwestern's encroachment is to be treated as an exercise of its power of eminent domain. Unquestionably Kerr-McGee is entitled to just compensation for the reasonable market value of its leasehold estate-- the reasonable market value, no doubt, of the minerals involved. The government has no interest in this except to require Kerr-McGee to account to it for its interest in whatever it receives.
 
 
 36
 To hold that the government must be formally joined, even though it has granted Transwestern's right of eminent domain, puts form ahead of substance. Also, a literal reading of the majority decision could seriously curtail the exercise of the power of eminent domain by pipeline companies.
 
 
 37
 Finally, I foresee that this decision may well place Transwestern in a position which is not only disadvantageous in relation to Kerr-McGee, but it may also subject it to hardship greatly disproportionate to the injury which its pumping station created.
 
 
 
 [1]
 Cox v. Revelle, 125 Md. 579, 94 A. 203 (1915), recognized the principle that a leasehold derived from the sovereign is subject to condemnation