RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KEVIN BROTT, et al.,

　　　　　　　*Plaintiffs-Appellants,*

　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　*Defendant-Appellee.*

No. 16-1466

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cv-00038—Janet T. Neff, District Judge.

Argued: February 2, 2017

Decided and Filed: May 31, 2017

Before: BATCHELDER, ROGERS, and WHITE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Mark F. Hearne II, ARENT FOX LLP, Washington, D.C., for Appellants. Brian C. Toth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Mark F. Hearne II, ARENT FOX LLP, Washington, D.C., Matthew L. Vicari, Stephen J. van Stempvoort, MILLER, JOHNSON, SNELL & CUMMISKEY, P.L.C., Grand Rapids, Michigan, for Appellants. Brian C. Toth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. John M. Groen, Ethan W. Blevins, PACIFIC LEGAL FOUNDATION, Sacramento, California, Steven J. Lechner, MOUNTAIN STATES LEGAL FOUNDATION, Lakewood, Colorado, Robert H. Thomas, DAMON KEY LEONG KUPCHAK HASTERT, Honolulu, Hawaii, Shelley Ross Saxer, PEPPERDINE SCHOOL OF LAW, Malibu, California, C. Thomas Ludden, LIPSON, NIELSON, COLE, SELTZER & GARIN, P.C., Bloomfield Hills, Michigan, for Amici Curiae.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.  Twenty-three Michigan landowners filed suit in federal district court seeking compensation in excess of $10,000 for the United States's alleged taking of their land for use as a public recreational trail.  The landowners assert that they are entitled to have their claims considered in an Article III court and by a jury.  However, Congress has acted constitutionally in bestowing on the Court of Federal Claims, an Article I court, exclusive jurisdiction over the landowners' compensation claims and removing the right to a jury trial for claims brought in the Court of Federal Claims and in the district court under the Little Tucker Act.  Therefore, we must affirm the district court's dismissal of the landowners' complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

**I.**

The landowners filed suit in the United States District Court for the Western District of Michigan, alleging three claims: (1) a Fifth Amendment claim for just compensation, brought under the Little Tucker Act, 28 U.S.C. § 1346; (2) a Fifth Amendment claim for just compensation, brought under 28 U.S.C. § 1331; and (3) a declaratory judgment claim requesting that the court determine that it has jurisdiction to hear the landowners' compensation claims.[1]

The district court determined that Congress, via the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, "vested the Court of Federal Claims with exclusive jurisdiction to hear all claims against the United States founded upon the Constitution where the amount in controversy exceeds $10,000."  The court found no constitutional infirmity in this statutory framework, despite the fact that the Tucker Act prevents the landowners from filing their claims for damages exceeding $10,000 in an Article III court, and litigants bringing claims in the Court of Federal

---

[1]The landowners also filed a parallel complaint in the United States Court of Federal Claims, Case No. 1:14-cv-567, alleging a claim for just compensation.  The case is currently stayed pending the outcome of the landowners' suit in the Western District of Michigan and the present appeal.  *Brott, et al. v. United States*, No. 1:14-cv-567 (Fed. Cl. Sept. 14, 2016).

Claims[2] or in the district court under the Little Tucker Act[3] are deprived of a jury trial. Further, because the landowners had failed to demonstrate that the Tucker Act and the Little Tucker Act were unconstitutional, the district court found that they had failed to demonstrate any basis for a declaratory judgment. The court therefore dismissed the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This appeal followed.[4]

## II.

"We review questions of subject-matter jurisdiction and statutory interpretation de novo." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 798 (6th Cir. 2012) (citation and quotation marks omitted). "The party opposing dismissal has the burden of proving subject matter jurisdiction." *Elgharib v. Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010) (quoting *Charvat v. GVN Mich., Inc.,* 561 F.3d 623, 627 (6th Cir. 2009)). We also review de novo a district court's decision to dismiss a declaratory judgment count for failure to state a claim. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 685 (6th Cir. 2016) (en banc).

The landowners assert that the district court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, to consider their Fifth Amendment claims. Alternatively, the landowners argue that, to the extent that the Tucker Act and the Little Tucker Act establish that the Court of Federal Claims has exclusive jurisdiction over the landowners' just-compensation claims, those Acts are unconstitutional because they deprive the landowners of review in an Article III court and by a jury.

---

[2]The Court of Federal Claims does not provide a jury in any trial. "The judicial power of the United States Court of Federal Claims with respect to any action, suit, or proceeding, except congressional reference cases, shall be exercised by a single judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other judges." 28 U.S.C. § 174(a).

[3]With one exception not relevant here, actions against the United States brought under the Little Tucker Act "shall be tried by the court without a jury." 28 U.S.C. § 2402.

[4]The landowners appealed their Little Tucker Act claim to the United States Court of Appeals for the Federal Circuit, Case No. 2016-1852, and their other two claims to this court. The Federal Circuit has stayed that appeal to allow the Sixth Circuit to rule on the subject matter jurisdiction issue. *Brott, et al. v. United States*, No. 2016-1852 (Fed Cir. July 5, 2016).

**III.**

Federal district courts do not have subject matter jurisdiction to consider just-compensation claims for money damages in excess of $10,000 against the United States. Rather the Tucker Act vests jurisdiction over such claims in the Court of Federal Claims. In pertinent part, the Tucker Act states that

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

28 U.S.C. § 1491(a)(1). The Little Tucker Act grants federal district courts concurrent jurisdiction for non-tort claims for money damages under $10,000 against the United States. Under the Little Tucker Act,

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . . (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . .

28 U.S.C. § 1346(a)(2). Together, the Tucker Act and the Little Tucker Act operate to vest in the Court of Federal Claims subject matter jurisdiction to consider non-tort claims for money damages against the United States in excess of $10,000.

Moreover, the Tucker Act vests in the Court of Federal Claims <u>exclusive</u> jurisdiction to hear such claims. The United States Supreme Court made this clear in *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), when it confirmed that a takings suit for money damages must be filed in the Court of Federal Claims but a declaratory judgment action, seeking determination that a government taking had occurred, may be filed in federal district court.

> Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for

liquidated or unliquidated damages in cases not sounding in tort." Accordingly, a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute.

*Id.* at 520 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016–19 (1984)); *see Blanchette v. Conn. Gen. Ins. Corps.* (*Reg'l Rail Reorganization Act Cases*), 419 U.S. 102, 126–27 (1974) ("The general rule is that whether or not the United States so intended, '[i]f there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine.'" (citation omitted)); *cf. Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988) (explaining that the Tucker Act's grant of jurisdiction to the Court of Federal Claims is "'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the [Court of Federal Claims]").

Contrary to the landowners' assertion, this court has previously determined that 28 U.S.C. § 1331 does not provide federal district courts with subject matter jurisdiction when Congress has otherwise provided an exclusive forum.

> 28 U.S.C. § 1331 (1976), the general federal question provision, does not provide a jurisdictional basis on these facts. The Fifth Amendment "taking" claim "arises under the Constitution," and a remedy for a violation of this provision arguably does not require a waiver of sovereign immunity. However, a number of cases indicate that Congress has made the Court of Claims the exclusive and an adequate forum for the Fifth Amendment claims, at least those over $10,000. We conclude that 28 U.S.C. § 1346(a)(2) expressly limits the district court's jurisdiction over these types of claims against the government to those not exceeding $10,000 in amount and that to utilize the court's federal question or pendent jurisdiction as to the Fifth Amendment claim would override the express policy of Congress embodied in the Tucker Act.

*Lenoir v. Porters Creek Watershed Dist.*, 586 F.2d 1081, 1088 (6th Cir. 1978) (internal citations and footnote omitted);[5] *cf. Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. United States*, 22 F.3d 741, 743–44 (7th Cir. 1994) (finding that 28 U.S.C. § 1367, providing district court with supplemental jurisdiction over certain claims, does not provide a district court with

---

[5]Among other claims, the plaintiff in *Lenoir* alleged a taking after improvements to a waterway resulted in flooding on his land, and brought suit in the district court seeking $750,000 in damages. 586 F.2d at 1084.

subject matter jurisdiction where Congress has expressly limited such jurisdiction in the Tucker Act).

Further, "it is familiar law that a specific statute controls over a general one without regard to priority of enactment." *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961) (citations and quotation marks omitted); *see Metro. Detroit Area Hosp. Servs., Inc. v. United States*, 634 F.2d 330, 334 (6th Cir. 1980). To read § 1331's broad grant of subject matter jurisdiction as controlling over the Little Tucker Act's specific and limited grant of jurisdiction, as the landowners do, violates this tenet of statutory interpretation. Therefore, the district court was correct to find that the Court of Federal Claims is the exclusive forum for the landowners' compensation claims and that it lacked subject matter jurisdiction under 28 U.S.C. § 1331 to review the landowners' claims.

## IV.

The landowners assert that, to the extent that the Tucker Act and the Little Tucker Act vest in the Court of Federal Claims exclusive jurisdiction to hear the landowners' claims for just compensation greater than $10,000, those Acts are unconstitutional, because the landowners are denied (1) adjudication of their Fifth Amendment claims in an Article III forum, in violation of the separation of powers doctrine, and (2) a jury trial, in violation of the Seventh Amendment. The landowners are not entitled to consideration of their constitutional claims by an Article III trial court or by a jury.

Suits against the United States are premised on a waiver of sovereign immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (footnote omitted); *see United States v. Sherwood*, 312 U.S. 584, 586 (1941). "[A]ny waiver of the United States' immunity from suit must be unequivocal," and "[b]ecause any exercise of a court's jurisdiction over the United States depends on the United States' consent, the waiver of sovereign immunity . . . must be strictly construed." *Clay v. United States*, 199 F.3d 876, 879 (6th Cir. 1999) (citations omitted); *see Sherwood*, 312 U.S. at 590 (explaining that the Tucker Act's waiver of sovereign immunity "must be strictly interpreted").

Congress may generally condition any grant of jurisdiction over suits against the United States by requiring that such suits be brought in a specific forum or by limiting the means by which a right is enforced.

> Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall.

*Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922) (internal citations omitted); *see Steckel v. Lurie*, 185 F.2d 921, 924 (6th Cir. 1950) ("Congress, in its unlimited discretion, may constitutionally give, withhold, restrict or take away altogether the jurisdiction of the district courts of the United States." (citation omitted)). Congress may also decline to waive sovereign immunity, or it may withdraw or modify its consent to suit, even if the right at issue is drawn from the Constitution. "Although consent to sue was thus given . . . Congress retained power to withdraw the consent at any time. For consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration." *Lynch v. United States*, 292 U.S. 571, 581 (1934) (citations omitted); *see Maricopa Cty., Ariz. v. Valley Nat'l. Bank of Phoenix*, 318 U.S. 357, 362 (1943) ("[T]he power to withdraw the privilege of suing the United States or its instrumentalities knows no limitations." (citation omitted)).

## A.

The Tucker Act operates as a limited waiver of sovereign immunity from suit, allowing litigants to seek money damages from the United States for certain claims. *Mitchell*, 463 U.S. at 215–16. "The Little Tucker Act and its companion statute, the Tucker Act, § 1491(a)(1), do not themselves 'creat[e] substantive rights,' but 'are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law.'" *United States v. Bormes*, 133 S. Ct. 12, 16–17 (2012) (footnote omitted) (quoting *United States v. Navajo Nation*,

556 U.S. 287, 290 (2009)). Congress has conditioned its waiver of sovereign immunity such that suits for money damages against the United States must be brought in the manner dictated by the Tucker Act and the Little Tucker Act. That is, just-compensation claims against the United States for money damages in excess of $10,000 must be brought in the Court of Federal Claims.

## 1.

The landowners assert that, while a waiver of sovereign immunity may be necessary to enforce a congressionally created entitlement, no waiver is necessary when the right being enforced is founded on the Constitution. Sovereign immunity, however, does not distinguish between congressionally created entitlements and constitutionally created rights. "The character of the cause is of no significance . . . ." *Coleman v. United States*, 100 F.2d 903, 905 (6th Cir. 1939).

> The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, and to those arising from some violation of rights conferred upon the citizen by the Constitution. The character of the cause of action—the fact that it is in contract as distinguished from tort—may be important in determining (as under the Tucker Act (24 Stat. 505)) whether consent to sue was given. Otherwise it is of no significance. For immunity from suit is an attribute of sovereignty which may not be bartered away.

*Lynch*, 292 U.S. at 582 (internal citations omitted). Therefore, in order for claims against it to proceed, the United States must waive sovereign immunity from suit for all those claims, regardless of the source of the rights at issue.

## 2.

Nevertheless, the landowners argue that an explicit waiver is unnecessary here because the Fifth Amendment right to just compensation is a "self-executing" right and the right to compensation itself contains a waiver of sovereign immunity. The Supreme Court has indeed referred to the Fifth Amendment right to just compensation as "self-executing." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987). The Supreme Court has explained that a Fifth Amendment takings claim is self-executing and grounded in the Constitution, such that additional "[s]tatutory recognition was not necessary."

*Id.* (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)); *see United States v. Dickinson*, 331 U.S. 745, 748 (1947).  However, the fact that the Fifth Amendment creates a "right to recover just compensation," *First English*, 482 U.S. at 315 (quoting *Jacobs*, 290 U.S. at 16), does not mean that the United States has waived sovereign immunity such that the right may be enforced by suit for money damages.  *See Minnesota v. United States*, 305 U.S. 382, 388 (1939) ("[I]t rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought.").

The landowners' arguments do not persuade us.  First, the landowners have cited no case in which the Fifth Amendment has been found to provide litigants with the right to sue the government for money damages in federal district court.  Instead,

> The doctrine of sovereign immunity—not repealed by the Constitution, but to the contrary at least partly reaffirmed as to the States by the Eleventh Amendment—is a monument to the principle that some constitutional claims can go unheard. No one would suggest that, if Congress had not passed the Tucker Act, 28 U.S.C. § 1491(a)(1), the courts would be able to order disbursements from the Treasury to pay for property taken under lawful authority (and subsequently destroyed) without just compensation.

*Webster v. Doe*, 486 U.S. 592, 613 (1988) (Scalia, J., dissenting) (citing *Schillinger v. United States,* 155 U.S. 163, 166–69 (1894)).  The United States argues that a waiver of sovereign immunity typically requires two things: the existence of a right and provision of a judicial remedy.  The Fifth Amendment details a broad right to compensation, but it does not provide a means to enforce that right.  Courts must look to other sources (such as the Tucker Act and the Little Tucker Act) to determine how the right to compensation is to be enforced.  *See Bormes*, 133 S. Ct. at 18.

Second, significant history contradicts the landowners' argument.  Even though the Fifth Amendment establishes a right to just compensation, there was a significant period of time in which litigants were unable to enforce that right by seeking money damages in court.  Before the establishment of the Court of Claims in 1855, there was no statute that expressly allowed a litigant to sue the United States to enforce monetary obligations. *See Bormes*, 133 S. Ct. at 17.  Instead, claimants who were owed money by the United States had to petition Congress directly

for a private act appropriating the necessary funds, suggesting that property owners could not sue the United States in court to seek just compensation for a taking.[6]  *Id.*

In 1855, Congress created the Court of Claims—the predecessor of the modern Court of Federal Claims—and gave it authority to hear and determine "all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States."  Act of Feb. 24, 1855, ch. 122, 10 Stat. 612. However, even after the Court of Claims was established, it was unclear whether litigants were still unable to seek compensation in court for a taking by the federal government.  In *Langford v. United States*, 101 U.S. 341 (1879), a landowner brought suit in the Court of Claims against the United States for the alleged seizure of his land and buildings.  The Supreme Court dismissed the landowner's claim, reasoning that the Court of Claims had no jurisdiction over tort claims against the United States; further, because the government seized the property under a claim of superior ownership the claim was based in tort, not contract.  *Id.* at 342–44.  With respect to takings, the Court stated:

> It is to be regretted that Congress has made no provision by any general law for ascertaining and paying this just compensation.  And we are not called on to decide that when the government, acting by the forms which are sufficient to bind it, recognizes that fact that *it is* taking *private* property for public use, the compensation may not be recovered in the Court of Claims. On this point we decide nothing.

*Id.* at 343–44.

In 1887, Congress enacted the Tucker Act.  *See* Act of Mar. 3, 1887, ch. 359, 24 Stat. 505.  The Tucker Act, like the 1855 Act before it, "provided the Federal Government's consent to suit in the Court of Claims for claims 'founded upon . . . any law of Congress.'"  *Bormes*, 133 S. Ct. at 18 (citation omitted).  The Tucker Act also expanded the Court of Claims's jurisdiction to include "[a]ll claims founded upon the Constitution."  § 1, 24 Stat. 505 (codified

---

[6]The Supreme Court has noted that "enterprising claimants" also pressed the so-called "officer's suit" as a device for circumventing federal sovereign immunity in land title disputes with the federal government.  *See Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 281 (1983).  For example, the claimants in *United States v. Lee*, 106 U.S. 196 (1882), sought to recover land taken by the United States by filing a state-law ejectment action against the officers who supervised the land at issue.  While the Supreme Court initially appeared to accept the device, such suits "ultimately did not prove to be successful."  *Block*, 461 U.S. at 281.

as amended at 28 U.S.C. § 1491(a)(1)).  Section 2 of the Tucker Act also created concurrent jurisdiction in the district court for claims of up to $1,000.  "The Tucker Act's jurisdictional grant, and accompanying immunity waiver"—allowing the Court of Claims to hear all Constitutional claims and the district courts to hear such claims below a threshold amount— "supplied the missing ingredient for an action against the United States for the breach of monetary obligations not otherwise judicially enforceable."  *Bormes*, 133 S. Ct. at 18 (footnote omitted).  The Tucker Act's waiver of sovereign immunity, therefore, is a necessary ingredient for just-compensation claims brought against the United States.

**3.**

The landowners also assert that, even if Congress can condition the means by which their claims can be brought against the United States, it cannot deprive them of review by an Article III court.  Contrary to the landowners' contention, their claims are "public right" claims that Congress may assign to a non-Article III court for review.

Some background is necessary.  The public rights doctrine allows Congress to remove consideration of certain matters from the judicial branch and to assign such consideration to legislative courts or administrative agencies.  *See Stern v. Marshall*, 564 U.S. 462, 488–92 (2011).  "[T]here are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."  *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855); *see N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70 (1982) (plurality opinion) ("[C]ontroversies [between the government and others] may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination.").

At one time the public rights doctrine applied "only to matters arising 'between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments,' and only to matters that historically could have been determined exclusively by those departments."  *N. Pipeline*, 458

U.S. at 67–68 (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932) and citing *Ex parte Bakelite Corp.*, 279 U.S. 438, 458 (1929)). The Supreme Court has since "rejected the limitation of the public rights exception to actions involving the Government as a party." *Stern*, 564 U.S. at 490. The Court explained that if a waiver of sovereign immunity is necessary before a case may be brought then that case involves a public right. *Id.* at 489 ("The challenge in *Murray's Lessee . . .* likewise fell within the 'public rights' category of cases, because it could only be brought if the Federal Government chose to allow it by waiving sovereign immunity."). Thus, "it is still the case that what makes a right 'public' rather than private is that the right is integrally related to particular federal government action." *Id.* at 490–91 (citing *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 174 (2011)).

Alternatively, suits addressing a "private right" generally may not be assigned to a legislative court or administrative agency. *See Stern*, 564 U.S. at 494; *N. Pipeline*, 458 U.S. at 70. Private-right disputes "lie at the core of the historically recognized judicial power." *N. Pipeline*, 458 U.S. at 70. Private rights address "the liability of one individual to another under the law as defined," *id.* at 69–70 (quoting *Crowell*, 285 U.S. at 51), and concern "a suit at the common law, or in equity, or admiralty," three categories of cases "Congress may not 'withdraw from [Art. III] judicial cognizance,'" *Stern*, 564 U.S. at 484 (quoting *Murray's Lessee*, 59 U.S. at 284).

The landowners' compensation claims are public-right claims. These are claims made by private individuals against the government in connection with the performance of a historical and constitutional function of the legislative branch, namely, the control and payment of money from the treasury. Indeed, the Court of Claims, the predecessor to the Court of Federal Claims, derived its power from the "Congressional power 'to pay the debts . . . of the United States', which it is free to exercise through judicial as well as non-judicial agencies." *Sherwood*, 312 U.S. at 587 (quoting U.S. Const. art. 1, § 8, cl. 1); *see Bakelite*, 279 U.S. at 452 (explaining that the Court of Claims "was created, and has been maintained, as a special tribunal to examine and determine claims for money against the United States. This is a function which belongs primarily to Congress as an incident of its power to pay the debts of the United States").

Therefore, Congress may delegate the landowners' just-compensation claims to a legislative court—the Court of Federal Claims—for resolution.

**4.**

But, the landowners argue, their just-compensation claims are "inherently judicial" and must be resolved by an Article III court.  In support of their argument, Appellants primarily rely on *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 327 (1893), for the proposition that the measure of compensation for a taking is a judicial question.  *Monongahela* is inapposite.  The *Monongahela* opinion addresses an 1888 private legislative act that ordered inadequate compensation for construction of a lock and dam.  *Id.* at 344–45; *see* Act of Aug. 11, 1888, ch. 860, 25 Stat. 400, 410–12.  The 1888 Act further provided that, should condemnation proceedings commence, jurisdiction over such proceedings was given to "the circuit court of the United States for the western district of Pennsylvania with right of appeal by either party" to the Supreme Court.  *Id.* at 313 (quoting 25 Stat. at 411).  Unlike the present case, the 1888 Act provided a specific Article III court with jurisdiction over the *Monongahela* litigants' claims.

Further, to the extent that *Monongahela* dictates that a question of just compensation is a judicial determination, several courts of appeals have found that this requirement is satisfied when judicial review is available in an Article III court.  For example, in *Gulf Power Co. v. United States*, 187 F.3d 1324 (11th Cir. 1999), the Eleventh Circuit considered whether the Pole Attachment Act violated the separation of powers doctrine by allowing the FCC to determine a utility's compensation for a taking under the Act.  The Eleventh Circuit found that the statutory scheme was constitutional because, while the FCC initially determined the utility's compensation, the utility could appeal the FCC's order directly to a federal appeals court.  Thus, "[u]nder the statutory scheme, it is the judicial branch which will, consistent with *Monongahela*, make the ultimate determination of just compensation due for a taking of a utility's property under the Act."  *Id.* at 1334; *see Wis. Cent. Ltd. v. Pub. Serv. Comm'n of Wis.*, 95 F.3d 1359, 1369 (7th Cir. 1996) (explaining that the judicial determination requirement in *Monongahela* "is satisfied by the availability of judicial review.  The Fifth Amendment does not require a judicial determination of just compensation in the first instance on each occasion of a taking of private property"); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012) (noting that an

administrative agency may address constitutional claims in the first instance, subject to meaningful judicial review by federal appellate courts, without presenting a "serious constitutional question" (citations omitted)).  The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction" "of an appeal from a final decision of the United States Court of Federal Claims."  28 U.S.C. § 1295(a)(3).  The landowners will ultimately receive judicial review of their claims by an Article III court—the Federal Circuit.

The separation of powers doctrine does not prohibit Congress from denying the landowners the ability to bring their claims in an Article III forum.  Therefore, the district court did not err by finding that the Tucker Act and the Little Tucker Act do not violate the separation of powers doctrine and by dismissing the landowners' declaratory judgment claim on that basis.

**B.**

Congress's conditional waiver of sovereign immunity from suits for money damages against the government also includes the requirement that claims brought in the Court of Federal Claims, or under the Little Tucker Act, shall be tried without a jury.  28 U.S.C. § 174; 28 U.S.C. § 2402.  We appreciate the landowners' desire to have their compensation claims heard by a jury.  However, Congress's denial of a jury trial for money damages claims against the United States is not a violation of the Seventh Amendment.

"It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government."  *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999).  The Seventh Amendment protects the right to a jury trial for "[s]uits at common law."  U.S. Const. amend. VII; *see City of Monterey*, 526 U.S. at 708–09.  Suits against the United States for money damages are not suits at common law.

> Suits against the government in the Court of Claims, whether reference be had to the claimant's demand, or to the defen[s]e, or to any set-off, or counter-claim which the government may assert, are not controlled by the Seventh Amendment. They are not suits at common law within its true meaning.  The government cannot be sued, except with its own consent.  It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits.  It may restrict the jurisdiction of the court to a

consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counter-claim, or other demand of the government, upon which judgment may go against him, without the intervention of a jury, if the court, upon the whole case, is of opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege. Nothing more need be said on this subject.

*McElrath v. United States*, 102 U.S. 426, 440 (1880) (emphasis added); *see Sherwood*, 312 U.S. at 587; *see also Glidden Co. v. Zdanok*, 370 U.S. 530, 572 (1962) (plurality opinion). In the present case, the landowners are taking advantage of the United States's waiver of sovereign immunity and they must do so pursuant to the conditions of that waiver, including proceeding without a jury trial.

Further, the Supreme Court has determined that "in cases in which 'public rights' are being litigated . . . the Seventh Amendment does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible." *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 450 (1977) (footnote omitted). As explained above, claims against the United States for money damages are public-right claims. The Seventh Amendment thus does not prohibit Congress from denying the landowners the right to a jury trial for claims against the United States for money damages. Therefore, the district court did not err by dismissing the landowners' declaratory judgment claim on that basis.

**V.**

The district court correctly determined that it lacked subject matter jurisdiction to consider the landowners' claims and that the landowners failed to state a claim. The Tucker Act and the Little Tucker Act vest in the Court of Federal Claims exclusive jurisdiction to hear just-compensation claims against the United States for money damages in excess of $10,000. Further, the Tucker Act and the Little Tucker Act are constitutional and do not violate the separation of powers doctrine or the Seventh Amendment. We certainly appreciate the landowners' desire to have their claims heard in an Article III court and by a jury. However,

Congress may, as it has done here, place conditions upon its waiver of sovereign immunity and require that just-compensation claims for money damages in excess of $10,000 against the United States be heard in the Court of Federal Claims without a jury. We therefore AFFIRM the district court's order.