RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0070p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JULIE HAUTZENROEDER,

*Petitioner-Appellant*,

*v.*

MICHAEL DEWINE, Ohio Attorney General,

*Respondent-Appellee*.

No. 17-3395

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:16-cv-00443—Michael R. Barrett, District Judge.

Argued: January 24, 2018

Decided and Filed: April 11, 2018

Before: COLE, Chief Judge; SILER and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Wendy R. Calaway, THE LAW OFFICE OF WENDY R. CALAWAY, CO., L.P.A., Cincinnati, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Wendy R. Calaway, THE LAW OFFICE OF WENDY R. CALAWAY, CO., L.P.A., Cincinnati, Ohio, for Appellant. Stephanie L. Watson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

COOK, Circuit Judge. Due to her conviction for sexual battery, Julie Hautzenroeder must forever comply with Ohio's sex offender registration and notification laws. After her release from prison and community control, Hautzenroeder filed a habeas petition under 28

U.S.C. § 2254 challenging her conviction with its attendant ongoing reporting burden. The district court dismissed the petition, deciding that it lacked jurisdiction under § 2254 because Hautzenroeder was no longer "in custody." Hautzenroeder timely appealed, and we AFFIRM.

## I. BACKGROUND

An Ohio jury found Hautzenroeder, a high school teacher, guilty of one count of sexual battery involving a student. Although her state court appeals were unsuccessful, Hautzenroeder benefitted from the trial court's suspending most of her two-year prison sentence and discharging her early from community control. But no court could suspend Hautzenroeder's statutorily-mandated classification as a Tier III sex offender with its associated lifetime reporting requirements. *See* Ohio Rev. Code §§ 2950.01(G)(1)(a), 2950.07(B)(1).

Hautzenroeder's federal habeas petition alleged a due process violation stemming from insufficient evidence supporting her conviction. Ohio moved to dismiss, arguing that the district court lacked jurisdiction over the petition because Hautzenroeder filed it after her period of incarceration and community control expired—in other words, when she was no longer "in custody." Agreeing with a magistrate judge's report and recommendation, the district court dismissed her petition for want of jurisdiction. That court's later grant of a certificate of appealability as to "whether petitioner is in custody for purposes of habeas relief and whether the Court properly granted respondent's motion to dismiss" occasions this appeal.

## II. ANALYSIS

"We apply de novo review to questions of subject matter jurisdiction." *Steverson v. Summers*, 258 F.3d 520, 522 (6th Cir. 2001). As the party opposing dismissal, Hautzenroeder bears the burden of establishing the existence of jurisdiction. *Brott v. United States*, 858 F.3d 425, 428 (6th Cir. 2017).

Federal courts may "entertain an application for a writ of habeas corpus [o]n behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a) (emphasis added). This language is jurisdictional: if a petitioner is not "in custody" when she files her petition, courts may not consider it. *Steverson*, 258 F.3d at 522.

The Supreme Court holds that a petitioner is "in custody" when she is subject to conditions that "significantly restrain [her] liberty to do those things which in this country free men are entitled to do." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *see also Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973) ("The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty."). Comparing herself to a parolee, Hautzenroeder maintains that the continuous burdens and restrictions of her Tier III classification similarly circumscribe her liberties, rendering her "in custody" under § 2254. *See Jones*, 371 U.S. at 242 (detailing terms of petitioner's parole).

Yet not all consequences that flow from a criminal conviction significantly curb one's liberty. "[O]nce the sentence imposed for a conviction has completely expired, *the collateral consequences* of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam) (emphasis added). Hautzenroeder is no longer in custody, the State's argument goes, because her obligations are "collateral consequences" of her conviction, not "severe restraints on liberty." *See, e.g.*, *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (giving examples of collateral consequences, including losing the right to vote, to serve as a juror, or to engage in certain businesses).

In *Leslie v. Randle*, we decided that a habeas petitioner's obligations under Ohio's sex offender registration law were "more analogous to collateral consequences such as the loss of the right to vote than to severe restraints on freedom of movement such as parole." 296 F.3d 518, 522–23 (6th Cir. 2002). But *Leslie* concerned Ohio's pre-2007 sex offender registration scheme. That year, Ohio revamped its law to align with the federal Sex Offender Registration and Notification Act ("SORNA"). *See State v. Bodyke*, 933 N.E.2d 753, 759 (Ohio 2010). To prevail, therefore, Hautzenroeder must show that the new law's requirements so materially differ from the old regime's as to warrant a different result. She argues that several features of Ohio's SORNA meet this test. We are unpersuaded.

### A. Obligation to Provide and Update Information

First, Hautzenroeder argues that the enhanced reporting requirements of the new law materially distinguish her case from *Leslie*. The State concedes that, as compared to its old registration law, Ohio's SORNA requires offenders to report more information to more officials. *See Leslie*, 296 F.3d at 521 (discussing Ohio's former registration requirements); *compare* Ohio Rev. Code §§ 2950.04, 2950.06, *with* Ohio Rev. Code Ann. §§ 2950.04, 2950.06 (LexisNexis 2001). She characterizes these requirements as "a unique encumbrance, which chills registrants' freedom of movement."

In reality, Hautzenroeder's obligations under Ohio's SORNA differ from those under Ohio's previous regime only in degree, not in kind. Her "ability to move to a different community or residence is . . . not conditioned on approval by a government official." *Leslie*, 296 F.3d at 522. She need not "remain employed, nor is [she] prohibited from engaging in any legal activities." *Id.*; *see also Wilson v. Flaherty*, 689 F.3d 332, 338 (4th Cir. 2012) (making the same point with respect to Virginia and Texas registration laws). In other words, Hautzenroeder's freedom of movement is unconstrained, her registration and reporting obligations notwithstanding.

Her circumstances are also readily distinguishable from the facts of *Jones* and *Hensley*, where the Supreme Court found that the petitioners were "in custody" because the government exercised direct control over their movements. The *Jones* petitioner was a parolee; the terms of his parole confined him to "a particular community, house, and job." 371 U.S. at 242. He could not drive a car without authorization, and he was to "keep away from undesirable places." *Id.* The *Hensley* petitioner, a man released on his own recognizance, was "in custody" because he could not "come and go as he please[d]. His freedom of movement rest[ed] in the hands of state judicial officers, who [could] demand his presence at any time and without a moment's notice." 411 U.S. at 345, 351. Hautzenroeder suffers no such burdens.

Though registration obligations present a serious nuisance, as the First Circuit put it, "even grievous collateral consequences stemming directly from a conviction cannot, without more, transform the absence of custody into the presence of custody." *Lefkowitz v. Fair*, 816

F.2d 17, 20 (1st Cir. 1987) (holding that the loss of a medical license did not render a sex offender who had completed his sentence "in custody"). Other courts likewise hold that personal registration requirements are not enough to render a sex offender "in custody." *See, e.g.*, *Dickey v. Allbaugh*, 664 F. App'x 690, 693–94 (10th Cir. 2016) (Oklahoma law); *Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1072–74 (10th Cir. 2014) (Colorado law); *Wilson*, 689 F.3d at 337–38 (Virginia and Texas laws); *Henry v. Lungren*, 164 F.3d 1240, 1242 (9th Cir. 1999) (California's pre-SORNA registration law). No court of appeals has held otherwise, and Hautzenroeder has given us no reason to diverge from this unanimous body of precedent.

## B. Dissemination of Information to the Public

Ohio's SORNA requires the county sheriff to inform the offender's neighbors, area school officials, and the local municipal police chief, among others, of the offender's presence in the community. *See generally* Ohio Rev. Code § 2950.11(A)–(B). School officials may likewise inform their employees, who must report if they see the offender near the school. *See generally* Ohio Admin. Code 109:5-4-04. Ohio law also requires that sex offender information (such as the offender's name, physical characteristics, associated addresses, vehicle information, and criminal history details) be included in an online database that members of the public can use to search for sex offenders in their area. *See* Ohio Rev. Code §§ 2950.081, 2950.13(A)(11).

Hautzenroeder contends that the dissemination of such information transforms her conviction into a scarlet letter, encroaching on her liberty interests. She claims that widespread knowledge of her status may hinder her efforts to obtain employment or participate in ordinary social activities, impair her parenting abilities, and subject her to vigilantism and harassment.

But Hautzenroeder fails to show how Ohio's current publicization scheme materially differs from the Ohio regime that the *Leslie* court found non-custodial. On this score, as the State observes, there are only two differences between Ohio's old law and the version we review today. First, today's law requires notifying a broader audience when a sex offender is in a community. *Compare id.* § 2950.11, *with* Ohio Rev. Code Ann. § 2950.11 (LexisNexis 2001). Second, the current law mandates more extensive dissemination of information about offenders

via the internet. *Compare* Ohio Rev. Code §§ 2950.081, 2950.13(A)(11), *with* Ohio Rev. Code Ann. § 2950.081 (LexisNexis 2001).

These differences are insufficient to render Hautzenroeder in custody. As the Supreme Court explained in *Smith v. Doe*:

> Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. . . . It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. *Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.*

538 U.S. 84, 98–99, 105–06 (2003) (emphasis added) (holding Alaska's registration scheme to be non-punitive for retroactive application purposes); *see also Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6–7 (2003) ("mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest" (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976))).

Hautzenroeder has presented nothing to show that Ohio's publicization rules are meant to humiliate offenders rather than protect the public. Neither the availability of this information on the internet nor the expanded community notification provisions place Hautzenroeder "in custody."

### C. Bar on Establishing a Residence in Certain Areas

Ohio law also forbids sex offenders from "establish[ing] a residence or occupy[ing] residential premises within one thousand feet of any school premises or preschool or child day-care center premises." Ohio Rev. Code § 2950.034(A). Violations are not criminal; instead, the State grants neighbors and local officials standing to sue the offender for injunctive relief (i.e., to get a court order compelling the offender to vacate the residence). *Id.* § 2950.034(B).

Hautzenroeder portrays this as a particularly burdensome provision that "restrict[s] her habitation to certain segments of society." Not so. Many states impose similar restrictions,

which may be more severe than Ohio's.  In Oklahoma, for example, sex offenders may not live, either temporarily or permanently, within 2,000 feet of any "school . . . , educational institution, property or campsite used by an organization whose primary purpose is working with children, a playground or park . . . , or a licensed child care center." *Dickey*, 664 F. App'x at 692 (quoting Okla. Stat. tit. 57, § 590(A)) (alterations in original).  A habeas petitioner alleged that this restriction, together with his other obligations under Oklahoma's sex offender registration scheme, rendered him "in custody." *Id*.  The Tenth Circuit acknowledged that the scheme was "restrictive," but nevertheless decided that the law's requirements were "collateral consequences . . . and not a continuation of punishment." *Id.* at 693–94.

Hautzenroeder has not demonstrated that Ohio's residency restrictions amount to governmental control over her movements.  Although she may not be able to make her home in some parts of some neighborhoods, there is no reason to believe that the vast majority of real estate is not open to her.  Put another way, she has not shown that the law operates to confine her to "a particular community[] [or] house."  *Jones*, 371 U.S. at 242.  And so the residency restrictions remain consequences collateral to her conviction.

**D.  Fear of Consequences of Deviation**

Should Hautzenroeder fail to register or provide certain information, she would be guilty of a third degree felony that carries potential prison time. *See* Ohio Rev. Code § 2950.99(A)(1). Hautzenroeder characterizes her possible criminal liability as a sword of Damocles causing her, like the *Jones* petitioner, to "live in constant fear that a single deviation, however slight, might be enough to result in [her] being returned to prison." 371 U.S. at 242.

But if Hautzenroeder were to violate Ohio's SORNA requirements, any repercussions would stem not from her original conviction but from a new, separate criminal proceeding.  On this point we can differentiate Hautzenroeder from a parolee who may face reimprisonment stemming from her original conviction.  The Supreme Court has observed that this distinction is vital. *See Maleng*, 490 U.S. at 492–93 ("When the second sentence is imposed, it is pursuant to the second conviction that the petitioner is incarcerated and is therefore 'in custody.'"); *see also Thomas v. Morgan*, 109 F. Supp. 2d 763, 767 (N.D. Ohio 2000) ("[A] petitioner not in physical

custody must be subject to some sort of supervisory control along with the imminent possibility of incarceration without a formal trial and criminal conviction.").

In fact, criminal sanction for non-compliance with the registration regime is nothing new in Ohio: the State's former registration scheme likewise criminalized non-compliance. *See State v. Cook*, 700 N.E.2d 570, 575 (Ohio 1998). Still, we held that the old law did not render a convicted sex offender "in custody." *Leslie*, 296 F.3d at 521, 523. Ohio's SORNA is not meaningfully different in this regard.

### E. Ohio's SORNA's Punitive Nature

Hautzenroeder emphasizes the Ohio Supreme Court's holding that the State's SORNA, unlike its predecessor statute, is "punitive," barring its retroactive application. *State v. Williams*, 952 N.E.2d 1108, 1112–13 (Ohio 2011); *see also Cook*, 700 N.E.2d at 581 (holding former sex offender registration scheme "remedial, not punitive"). She also cites this court's recent decision in *Does #1–5 v. Snyder*, where we held that the Ex Post Facto Clause of the Constitution prohibits the retroactive application of Michigan's Sex Offender Registration Act to persons convicted before that Act's passage. 834 F.3d 696, 705–06 (6th Cir. 2016). It would be incongruous for a law to be considered "punitive" in the ex post facto context, she argues, yet fail to render a petitioner "in custody" for habeas purposes. Hautzenroeder also highlights *Leslie*'s citing the Ohio Supreme Court's holding that Ohio's old law was "remedial, not punitive" as "additional support" for our determination that the petitioner was not in custody. *See Leslie*, 296 F.3d at 522–23; *Cook*, 700 N.E.2d at 581; *see also Calhoun*, 745 F.3d at 1074 (noting that "the Colorado sex-offender registration requirements are remedial, not punitive," as support for holding that a Colorado offender was not "in custody").

The State aptly observes, however, that the two issues pose different legal questions. Ex post facto analysis asks whether a law imposes a punishment. *See Does #1–5*, 834 F.3d at 700–01 (describing test). The habeas custody inquiry asks whether the petitioner is subject to a "severe restraint[] on individual liberty." *Hensley*, 411 U.S. at 351. Whether a registration scheme is punitive for ex post facto purposes leaves unanswered the "in custody" question. *See Dickey v. Patton*, No. CIV-15-685-M, 2015 WL 8592709, at *3–4 (W.D. Okla. Sept. 28, 2015)

(magistrate's report and recommendation) (deciding that petitioner was not "in custody" despite the fact that the Oklahoma Sex Offender Registration Act was punitive for ex post facto purposes), *adopted in full*, No. CIV-15-685-M, 2015 WL 8494009, at *1 (W.D. Okla. Dec. 10, 2015), *aff'd sub nom. Dickey v. Allbaugh*, 664 F. App'x 690 (10th Cir. 2016); *see also Leslie*, 296 F.3d at 523 (Clay, J., concurring) ("[T]he holding in this case is limited to the habeas context and does not foreclose a plaintiff from litigating constitutional claims pertaining to a sex offender registration statute in a non-habeas proceeding.").

So, put simply, Hautzenroeder's appeal does not hinge on the punitive nature of this statute. We are concerned only with whether her statutorily mandated obligations are custodial. And as we have explained, they are not.

## III. CONCLUSION

We thus AFFIRM the district court's dismissal of Hautzenroeder's habeas petition for want of jurisdiction.